800 F.2d 1008
 Fed. Sec. L. Rep. P 92,906, 5 Fed.R.Serv.3d 1163
 SEATTLE-FIRST NATIONAL BANK, Plaintiff-Appellee,
v.
James CARLSTEDT, William H. Erwin, Myron W. Wheat, Jr.,
M.D., Martin Itzler, William L. Gray, III, James
L. Erb, Bernard Edwards, and Carl
Anderson, Defendants-Appellants.
 Nos. 84-1955, 84-1961, 84-1967, 84-1974, 84-1978, 84-1979,
84-1984 and 84-1988.
 United States Court of Appeals,
 Tenth Circuit.
Sept. 8, 1986.
 
 Bruce E.H. Johnson of Davis, Wright, Todd, Riese & Jones, Seattle, Wash., and Russell L. Mulinix of Hastie & Kirschner, Oklahoma City, Okl., for plaintiff-appellee.
 James M. Shuler of Kass, Hodges & Massari, Tampa, Florida (Larry D. Patton, Oklahoma City, Okl., with him on brief), for defendants-appellants.
 Before BARRETT, MOORE, and BALDOCK, Circuit Judges.
 PER CURIAM.
 
 
 1
 This consolidated appeal is from an entry of summary judgment by the district court in favor of Seattle-First National Bank on 35 promissory notes executed by appellants-defendants in exchange for loans to purchase ownership interests in Onyx Private Drilling Program, Ltd.-1981 (Onyx), an Oklahoma oil and gas drilling limited partnership.
 
 
 2
 In 1981, Ramco Well Services, Inc. formed the Onyx Private Drilling Program. Investor interest in Onyx was solicited through a private placement offering. In order to provide investors with tax incentives, leveraged subscription financing was arranged through the Penn Square Bank, N.A. (Penn Square), in Oklahoma City, Oklahoma, which agreed to loan Onyx investors up to 75% of their investment secured by their interest in Onyx.
 
 
 3
 The defendants in this action are investors in Onyx who financed their investments in part with money borrowed from Penn Square. In exchange for these loans, the defendants executed and delivered to Penn Square promissory notes dated November 23, 1981, secured by their interests in Onyx. Thereafter, Seattle-First National Bank (SeaFirst) agreed to purchase a participation interest in the Penn Square loans to the Onyx investors. On December 15, 1981, SeaFirst provided $3,900,000 to Penn Square on behalf of the borrowers. On March 26, 1982, SeaFirst and Penn Square executed a formal participation agreement which granted SeaFirst an undivided fractional interest in each loan.
 
 
 4
 In July, 1982, Penn Square was declared insolvent by the Comptroller of the Currency and the Federal Deposit Insurance Corporation (FDIC). Pursuant to 12 U.S.C. Sec. 1821(c), the FDIC became the successor in interest to Penn Square. By June 30, 1983, the Onyx investors who are defendants in this action defaulted on their loan payments to Penn Square. Between June 1 and July 26, 1983, the Penn Square Onyx notes and security agreements were assigned to SeaFirst by the FDIC.
 
 
 5
 Between October 3 and 18, 1983, SeaFirst filed collection actions against the Onyx investors in the United States District Court for the Western District of Oklahoma. On December 5, 1983, the defendants moved to dismiss SeaFirst's actions on jurisdictional grounds or, in the alternative, to transfer the case. On January 10, 1984, the district court denied the defendants' motion.
 
 
 6
 On January 30, 1984, defendants filed their answer and defenses, a counterclaim, and a demand for jury trial. Defendants' counterclaim sought damages for SeaFirst's alleged violation of federal securities laws on the ground that Penn Square and others had acted as "agents" for SeaFirst in arranging the financing of Onyx. The defendants asserted that SeaFirst, as principal, was liable to them in violation of the antifraud section of the federal securities law, section 10(b) of the Security Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and Rule 10b-5, 17 C.F.R. Sec. 240.1a(b)(5). (R., Vol. II, p. 156.) On March 6, 1984, SeaFirst moved to dismiss the defendants' counterclaim for failure to identify with particularity under Rule 9(b) of the Federal Rules of Civil Procedure[1] any facts to support SeaFirst's alleged involvement in the securities fraud involving Onyx. On April 25, 1984, the district court granted SeaFirst's motion to dismiss the counterclaim, finding that it did not satisfy Rule 9(b), Seattle-First National Bank v. Carlstedt, 101 F.R.D. 715 (W.D.Okla.1984). The defendants then filed a motion to amend their answer and counterclaim which was denied by the district court on May 17, 1984, on the ground that the proposed amendment contained no new allegations which would bring the counterclaim within the limits of Rule 9(b). Thereafter, on May 29, 1984, the district court entered summary judgment in favor of SeaFirst on the promissory notes. The defendants appeal from the entry of summary judgment in favor of SeaFirst, invoking our jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 
 7
 Defendants raise several issues on appeal. Only one, however, is dispositive: whether the district court erred in dismissing defendants' counterclaim alleging federal securities fraud violations for failure to comply with the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. We hold that the district court erred as a matter of law in dismissing defendants' counterclaim. We must therefore reverse.
 
 
 8
 We begin our analysis by addressing the issue of whether the Rule 9(b) requirement of pleading the circumstances of fraud with particularity applies to this securities fraud counterclaim. In Stevens v. Vowell, 343 F.2d 374, 379 (10th Cir.1965), we addressed the scienter requirement for proving a section 10(b) and a Rule 10b-5 violation and we there stated, in dictum, that Rule 9(b) did not apply to that particular case:
 
 
 9
 It is not necessary to allege or prove common law fraud to make out a case under the statute and rule. It is only necessary to prove one of the prohibitive actions such as the material misstatement of fact or the omission to state a material fact.[3] ..
 
 
 10
 In an opinion by a panel of this court subsequent to Stevens v. Vowell, we held in a securities fraud case that "[t]he circumstances constituting fraud must be stated with particularity," citing Rule 9(b). Utah State University v. Bear, Stearns & Co., 549 F.2d 164, 171 (10th Cir.), cert. denied, 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176 (1977) (without citation to Stevens v. Vowell, supra ). Given the specific reliance on Rule 9(b) in our decision in Utah State University v. Bear, Stearns & Co., supra, we hold that in this circuit the particularity requirement of Rule 9(b) is applicable generally in securities fraud cases.
 
 
 11
 The district court dismissed defendants' counterclaim on the pleadings solely for failure to satisfy Rule 9(b): "Sound reasoning and common sense dictates that the counterclaim defendants filed in this court totally fails to meet the standard imposed by Fed.R.Civ.P. 9(b), and that SeattleFirst's motion to dismiss must therefore be granted." (R., Vol. III, p. 593.) While the counterclaim and the proposed amended counterclaim are not examples of "model" pleadings, given the liberal approach this court has taken regarding securities fraud cases, see, e.g. Clegg v. Conk, 507 F.2d 1351 (10th Cir.1974), cert. denied, 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975), and the importance of reading Rule 9(b) in conjunction with the pleading requirements of Rule 8, see 5 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1298 (1969), we hold the district court erred in dismissing the defendant's 10b-5 claim for failure to satisfy Rule 9(b).
 
 
 12
 The dismissal of a complaint or counterclaim for failing to satisfy the requirements of Rule 9(b) is treated as a dismissal for failure to state a claim upon which relief can be granted under Fed.Rules Civ.P. 12(b)(6). Benoay v. Decker, 517 F.Supp. 490, 494 (E.D.Mich.1981), aff'd without opinion, 735 F.2d 1363 (6th Cir.1984). Dismissal of a complaint or counterclaim pursuant to Rule 12(b)(6) is a dismissal on the pleadings unless "matters outside the pleading are presented to and not excluded by the court ..." in which case "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." 28 Fed.Rules Civ.P. 12(b). In this case, the district court did not consider "matters outside the pleadings." Therefore, the dismissal of the counterclaim and the amended counterclaim is on the pleadings.
 
 
 13
 A court's function in dismissing a counterclaim on the pleadings is merely to determine whether the counterclaim itself is legally sufficient; a court may not dismiss at the pleading stage of the action by weighing the evidence that might be presented or by otherwise considering the counterclaimant's likelihood of success. Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985). In reviewing a district court's dismissal on the pleadings for failure to state a claim, an appellate court must consider de novo whether the pleading is legally sufficient.
 
 
 14
 In Trussell v. United Underwriters, Ltd, 228 F.Supp. 757, 774-75 (D.Colo.1964), the court elaborated upon the Rule 9(b) requirements:
 
 
 15
 Rule 9(b) does not ... require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means ... that individual plaintiffs should identify particular defendants with whom they dealt directly, and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them--and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them--and how.
 
 
 16
 We believe this is a correct statement of Rule 9(b) requirements in securities fraud cases. We hold the defendants' counterclaim and amended counterclaim satisfy Rule 9(b) as explained in Trussell.[2]
 
 
 17
 The counterclaims identify the counter-defendants with whom the counter-plaintiffs dealt directly, and from whom they purchased stock; the occasions on which affirmative misstatements were allegedly made to counter-plaintiffs; and, what affirmative misstatements or half-truths were directed to counter-plaintiffs and how those statements were made. We express no opinion regarding the prospect for counter-plaintiffs' success on the merits; we simply hold that the counterclaims are legally sufficient. Because defendants' counterclaim bears on the enforceability of SeaFirst's promissory notes, we must reverse and remand for further proceedings consistent with this opinion.
 
 
 18
 REVERSED and REMANDED.
 
 MOORE, Circuit Judge, dissenting:
 
 19
 While I agree wholeheartedly with the court's legal analysis, I must respectfully dissent from the conclusion that the counterclaim complies with Fed.R.Civ.P. 9(b). I agree with the trial court's observation that the paper "is far from the 'simple, concise and direct' pleading required by Fed.R.Civ.P. 8(e)." Seattle-First National Bank v. Carlstedt, 101 F.R.D. 715, 720 (1984). Indeed, the counterclaim is a prolix tale of woe which requires an industrious effort to find the significant averments.
 
 
 20
 While there are certainly allegations of wrongdoing which would satisfy the pleading requirements of a securities fraud case, the trial court aptly pointed out the defendants in their counterclaim "have failed entirely to allege facts and circumstances, other than generalities that appear to apply to any up-stream bank doing business with Penn Square during the four year period preceding its collapse, that would connect Seattle-First with the making of these misrepresentations in any way." Seattle-First, 101 F.R.D. at 722.[1]
 
 
 21
 To say that the prolix claims made in the counterclaim satisfy the particularity requirements of Rule 9(e) is a more charitable application of the rule than I am willing to grant. I simply read the papers differently from the rest of the court and would affirm the judgment of the district court.
 
 
 
 [1]
 Fed.R.Civ.P. 9(b) provides:
 Rule 9. Pleading Special Matters
 * * *
 (b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.
 
 
 [3]
 It is for this reason that Rule 9(b), F.R.Civ.P., 28 U.S.C.A., requiring the pleading of fraud with particularity, is not applicable in this case, even assuming that the question was properly raised below
 
 
 [2]
 We note that to the extent the counterclaim and amended counterclaim seek to impose aiding and abetting liability under the securities laws on SeaFirst based on routine participation in the loans to the defendants, such claims would not satisfy Rule 9(b). See Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir.1983) (elements of secondary liability); Decker v. S.E.C., 631 F.2d 1380, 1386-88 (10th Cir.1980) (discussing secondary liability under securities laws); D & G Enterprises v. Continental Illinois Nat'l Bank, 574 F.Supp. 263, 266-68 (N.D.Ill.1983). Nor would bare allegations seeking to impose liability on SeaFirst merely because, in the course of normal banking functions, Penn Square lent money to the defendants. Woodward v. Metro Bank of Dallas, 522 F.2d 84, 96 (5th Cir.1975)
 
 
 [1]
 Also telling is the trial court's finding in its ruling on the motion to amend the counterclaim: "There is still no allegation of even a single instance when Seattle-First had direct contact with the defendants prior to its first attempts to collect on the notes involved herein in July of 1983, some nineteen months after defendants executed the notes and purchased their interest in Onyx." Seattle-First, 101 F.R.D. at 726 (emphasis added)